FILED
SUPERIOR COURT
OF GUAM

2024 MAR -5 AM 9: 16

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| TAKAGI & ASSOCIATES, INC., | Superior Court Case No. CV0599-23 |
| Plaintiff, | |
| v. | **DECISION AND ORDER** (Unlawful Detainer) |
| BROADCAST PROPERTIES, INC., | |
| Defendant. | |

This matter is before the Honorable Jonathan R. Quan upon Plaintiff Takagi & Associates, Inc.'s ("Takagi") Complaint for Unlawful Detainer.[1] The Court held hearings on the unlawful detainer claim on November 1, 2023 and November 16, 2023.[2] Present at the hearings were Attorney Seth Forman for Takagi, and Attorney Vanessa Williams for Defendant Broadcast Properties, Inc. ("BPI"). After the November 16, 2023 hearing, the Court took the unlawful detainer claim under advisement and now issues the following Decision and Order **DENYING** the unlawful detainer claim for invalid notice.

## BACKGROUND

Takagi is the fee simple owner of the property commonly known as the Acanta Mall in Tumon, Guam. Compl. at 2. On May 1, 2016, Takagi and BPI agreed to a "Master Lease Agreement for the Acanta Mall with Option to Purchase" (hereafter, "Lease Agreement"). The

---

[1] Takagi's Complaint also alleges a breach of contract action. *See Compl.* (Oct. 17, 2023). However, that action is not before this Court. While this Court has specific jurisdiction under 7 GCA § 4401(c)(13) to address unlawful detainer actions, it does not have general jurisdiction under 7 GCA § 4401(c) to hear other civil actions.

[2] The Court also called this case on October 24, 2023 and on November 7, 2023, but at the hearings scheduled on those dates were continued at a party's request until November 1, 2023 and November 16, 2023, respectively.

Lease Agreement provides for BPI to lease the property for twenty years at a monthly rent of $22,917.00, as well as a 5% late fee for any rent unpaid after the fifteenth of each month. *Id.* Section 4.0 of the Lease Agreement addresses default in rent payments:

> If BPI defaults in the payment of rent or the payment of any other money due [Takagi] or defaults in the performance of any of the covenants or conditions hereof, [Takagi] may give BPI and its mortgagee notice of such default. <u>If BPI does not cure any rent or additional rent default within thirty (30) days . . . then [Takagi] may terminate this Lease on not less than ten (10) days' notice to BPI.</u> On the date specified in said notice the term of this Lease shall terminate and BPI shall then quit and surrender the Leased Premises to [Takagi].

*Id.* at Ex. A (emphasis added).

On October 17, 2023, Takagi filed a Complaint in the Superior Court of Guam, alleging BPI had failed to make any rent payments from January 2023 through September 2023. The Complaint alleges two causes of action: one for unlawful detainer, and one for breach of contract. To support its claim for unlawful detainer, Takagi's Complaint includes several exhibits, two of which are directly relevant here:

(1) <u>The August 14 Letter:</u> On August 14, 2023, Takagi served on BPI a letter asserting BPI owed Takagi back rent since January 2023. This "August 14 Letter" asserted that BPI owes Takagi "$229,589.00 in back rent, plus a 5% delinquency fee on the back rent under paragraph 1.4.6 of the lease, plus 8% interest on the back rent under paragraph 1.4.7 of the lease," as well as an additional sum of at least $83,000.00 related to unpaid utility bills. *Id.* at Ex. D. The August 14 Letter demanded that BPI pay Takagi "sums[] totaling in excess of <u>$312,589.00,</u> plus the delinquency fees and interest" within thirty 30 days, or else the lease would be terminated. *Id.* (emphasis added).

(2) <u>The Five Day Notice:</u> On September 28, 2023, Takagi served on BPI a "Statutory Five (5) Day Notice to Pay Rent or Vacate Premises." This "Five Day Notice" asserted that, pursuant to 21 GCA §§ 21103 and 21105, BPI must either pay the overdue rent and late fees in full within five days or else vacate the property. The Five Day Notice claimed that BPI owed Takagi <u>$216,565.65,</u> calculated as the sum of nine months of overdue rent (at $22,917.00 per month) plus nine months of late fees (at $1,145.85 per month).

The Court heard the unlawful detainer claim on November 1, 2023. There, BPI argued that the August 14 Letter was an invalid notice under Guam's unlawful detainer statutes because it demanded more money than BPI actually owed because, allegedly, the Lease Agreement contemplated a mandatory rent abatement which was triggered by Typhoon Mawar. The Court continued the hearing to review case law on this issue and to give the parties an opportunity to submit briefs. *See* Plaintiff's Response (Nov. 7, 2023); Defendant's Response (Nov. 8, 2024). The hearing resumed on November 16, 2023. BPI continued to argue that the August 14 Letter was an invalid notice because it demanded an incorrect amount, and further argued that the Five Day Notice was invalid because the Lease Agreement demanded thirty-day notice. After the hearing, the Court took the matter under advisement.

## DISCUSSION

### 1. Principles of Unlawful Detainer

Unlawful detainer actions are governed by 21 GCA § 21101 *et seq.* As relevant here, a party is guilty of unlawful detainer:

> When he continues in possession, in person or by subtenant, without the permission of his landlord . . . after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and five (5) days' notice in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him, and if there is a subtenant in actual occupation of the premises, also upon such subtenant.

21 GCA § 21103(b). Because unlawful detainer is "purely statutory in nature, it is essential that a party seeking the remedy bring himself clearly within the statute." *Bank of Hawaii v. Chan*, 2003 Guam 7 ¶ 5 (quoting *Baugh v. Consumers Assocs.*, 50 Cal. Rptr. 822, 823 (Cal. Ct. App. 1966)); *see also Archbishop of Guam v. G.F.G. Corp.*, 1997 Guam 12 ¶ 10 (because an unlawful detainer proceeding is "intended to be summary in nature . . . the unlawful detainer statute must be complied with strictly.").

Strict compliance with 21 GCA § 21103 requires a landlord to establish three elements: "the tenant has defaulted in the payment of rent, [the tenant] is in possession of the property without the landlord's permission, and that the tenant has been served with a valid notice demanding payment or surrender of possession." *Archbishop*, 1997 Guam 12 ¶ 11 (emphasis added). The landlord meets the "valid notice" requirement of 21 GCA § 21103 if three conditions are met: "the

default notice must be served at least five days prior to the filing of the action, <u>must state the amount of rent which is due</u>, and must be served within one year of the date that the rent became due." *Id.* (emphasis added).

Additionally, the Court notes that 21 GCA § 21103 was derived from a prior version of California's unlawful detainer statute. *See id.* ¶ 10; *accord Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). And "[g]enerally, when a legislature adopts a statute which is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the originating jurisdiction." *Guerrero v. McDonald's Intern. Property Co., Ltd.*, 2006 Guam 2 ¶ 11. California case law is therefore persuasive here.

### 2. Takagi Did Not Give BPI "Valid Notice"

With respect to the three elements of an unlawful detainer claim, it is undisputed that BPI has failed to pay rent and remains in possession of the Acanta Mall. The only question before the Court is whether Takagi gave BPI the "valid notice" necessary to sustain an unlawful detainer action. The Court must therefore determine whether the Five Day Notice and/or the August 14 Letter qualifies as valid notice under 21 GCA § 21103.

#### A. The Five Day Notice Was Not Valid Under the Lease Agreement

As noted above, valid notice for an unlawful detainer action requires that "the default notice must be served at least five days prior to the filing of the action, must state the amount of rent which is due, and must be served within one year of the date that the rent became due." *Archbishop*, 1997 Guam 12 ¶ 11. Takagi's Five Day Notice appears to comply with these conditions. It was served on September 28, 2023, which is more than five days prior to the filing of the action; it states the amount of rent which is due, and that amount appears to be consistent with the terms of the lease;[3] and the rent it demands became due less than one year prior to September 28, 2023.

---

[3] Although BPI maintains its argument that Typhoon Mawar triggered a mandatory rent abatement under the terms of the Lease Agreement, the Court is unpersuaded. Section 3.0 of the Lease Agreement provides for a rent abatement only when a natural disaster "materially impairs" BPI's "reasonable use of the Leased Premises." There is no evidence before the Court at this time showing whether, how, or for how long BPI's use of the Acanta Mall was materially impaired. While the burden of proof in an unlawful detainer action generally belongs the landlord, the burden of proof on an affirmative defense belongs to the tenant. *See* 28 Cal. Jur. 3d Ejectment and Related Remedies § 137. The Court therefore finds that Section 3.0 has no effect on the limited question of whether Takagi gave BPI valid notice of the unlawful detainer action.

BPI argues, however, that the Five Day Notice was invalid for a different reason: because Section 4.0 of the Lease Agreement contemplates a thirty-day notice to cure a default in rent, not a five-day notice period.

The Court agrees. Section 4.0 of the Lease Agreement provides that if "BPI defaults in the payment of rent," then Takagi "may give BPI . . . notice of such default." Compl., Ex. A. It also provides that if "BPI does not cure any rent or additional rent default within thirty (30) days," then Takagi "may terminate this Lease on not less than ten (10) days' notice to BPI." *Id.* The Court finds the meaning of this contractual provision plain: after Takagi gives BPI a notice of default on rent payment, BPI is entitled to <u>thirty days</u> to cure the default.

This prompts the question of whether the thirty-day notice requirement in the Lease Agreement supersedes the five-day notice requirement provided by 21 GCA § 21103(b). As the Guam Supreme Court has not yet decided this issue, the Court looks to California case law. In California, parties to a commercial lease can agree to notice requirements which differ from the usual timeframe provided by the unlawful detainer statute (Cal. Civ. P. Code § 1161). As the California Court of Appeals has explained:

> In commercial leases the landlord and commercial tenant may lawfully agree to notice procedures that differ from those provided in the statutory provisions governing unlawful detainer. Thus, if the lease contains service requirements for the notice to quit at variance with the requirements in the unlawful detainer statutes, the lease provisions control.

*Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.*, 185 Cal. App. 4th 744 (Ct. App. 2010). Other California courts have reached similar conclusions. *See, e.g., Folberg v. Clara G.R. Kinney Co.*, 104 Cal. App. 3d 136, 140 (Ct. App. 1980) ("The parties could lawfully agree to notice requirements different from and superseding those contained in section 1161 because the lease was commercial rather than residential."); *Hignell v. Gebala*, 90 Cal. App. 2d 61, 67 (Ct. App. 1949 ("There is nothing in the contractual provision for the termination of the lease that violates any rule of public policy, and . . . parties may, in their lease, provide for the termination thereof upon notice different from and superseding that prescribed by the Code is well established."); *Esa Management, LLC v. Jacob*, 63 Cal. App. 5th Supp. 1 (Cal. Sup. Ct. App. Div. Mar. 10, 2021) ("A notice period longer than the three days set forth in [the California statute] is certainly permitted.").

Based on these authorities, the Court concludes that the thirty-day notice provision of the Lease Agreement supersedes the default five-day notice provision of 21 GCA § 21103(b). By entering into the Lease Agreement, Takagi and BPI mutually agreed that BPI would be entitled to a thirty-day notice to cure any default in rent. The Five Day Notice therefore failed to give BPI valid notice as required in an unlawful detainer action.[4]

### 2. The August 14 Letter Was Not Valid Because it Misstated the Rent Owed

The Court next considers whether the August 14 Letter qualified as valid notice under 21 GCA § 21103(b). Again, the three elements of valid notice in this context are: "the default notice must be served at least five days prior to the filing of the action, must state the amount of rent which is due, and must be served within one year of the date that the rent became due." *Archbishop*, 1997 Guam 12 ¶ 11. The first and third elements of the statute are clearly met; the August 14 Letter was served more than two months (and thus more than 30 days) prior to the filing of the Complaint on October 17, 2023, and it was served within a year of when the rent became due.

A notice, however, is only valid if it "state[s] the amount of rent which is due." *Id.* More specifically, the notice must *correctly* state the amount of rent due; "[a] default notice that overstates the amount due is insufficient to support an action for unlawful detainer." *Archbishop*, 1997 Guam 12 ¶ 12 (citation omitted). Even setting aside the claim related to unpaid utility bills, the August 14 Letter claims that BPI owes "$229,589.00 in back rent, plus a 5% delinquency fee on the back rent . . . plus 8% interest on the back rent." Compl., Ex. D. This amount exceeds what Takagi claims (and accounted for) in the Five Day Notice, the Complaint, and the Plaintiff's Response Brief (Nov. 7, 2023). Each of these later documents calculate BPI's debt to be $216,565.65, an amount which *includes* delinquency fees. Accordingly, the August 14 Letter appears to overstate the amount which BPI owed at that time.[5]

---

[4] BPI has also argued that Takagi failed to give valid notice because Takagi failed to prove service on each of BPI's subtenants. But since the Court has already found that the Five Day Notice was invalid on another basis, the Court does not need to decide the subtenant service issue.

[5] The $216,565.65 figure in the Five Day Notice and the Complaint also includes $22,917.00 for September 2023 rent, as well as $1,145.85 as a late fee for the September 2023 rent. But since the August 14 letter was served in August 2023, rent and late fees for September 2023 were presumably not part of the $229,589.00 calculation. This suggests an even larger deviation between the rent demanded by Takagi, and the rent actually owed by BPI, as of August 14, 2023.

The Guam Supreme Court has made it clear that the "amount" requirement for valid notice under 21 GCA § 21103(b) cannot be interpreted "liberally." *Archbishop*, 1997 Guam 12 ¶ 13; *see id.* ¶ 16 ("we are not persuaded that considerations of fairness justify a relaxed application of the notice requirement."). Because the August 14 Letter overstated the amount due, it was not a valid notice sufficient to support an unlawful detainer action. *Cf. Archbishop*, 1997 Guam 12 ¶ 12. And where valid notice is lacking, an unlawful detainer claim must fail.

## CONCLUSION

Based on the above analysis, the Court concludes that Takagi failed to give BPI the required "valid notice" to sustain an unlawful detainer action. The Five Day Notice did not suffice as a valid notice because the Lease Agreement required thirty-day notice and superseded the statutory five-day notice period, and the August 14 Letter did not qualify as a valid notice because it overstated the amount of money then owed by BPI. Thus, Takagi has not carried their burden for the summary remedy of unlawful detainer, and so that cause of action is **DENIED.**

The Court emphasizes that its decision is wholly limited to the unlawful detainer claim. Nothing in this decision should be construed as a substantive decision on any aspect of the breach of contract action which this Court has not been granted the statutory nor pro-tempore authority to entertain.

**SO ORDERED** this __151__ day of March, 2024.

HONORABLE JONATHAN R. QUAN
Magistrate Judge, Superior Court of Guam